IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS, INDIANA

| | |
|---|---|
| JACKQUELLA JONES<br>　　　Plaintiff,<br><br>　　v.<br><br>GENERAL MOTORS LLC,<br><br>　　　Defendant. | )<br>)<br>) CIVIL ACTION NO: 1:22-cv-00219<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, named above, complains of act and omissions to act by the Defendant. In support of his Complaint and as cause of action against Defendant. Plaintiff respectfully submits the following:

## JURISDICTION

1. This suit is authorized and instituted pursuant to Title VII 42 U.S.C. § 2000e and 42 U.S.C. § 1981 both as amended by the Civil Rights Act of 1991; 28 U.S.C § 1331 and 1343.

2. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") and received a notice of right to sue on or about December 20, 2021.

## PARTIES

3. Plaintiff is an African American female and at all relevant times she resided in the Southern District of Indiana.

4. Defendant is a corporation doing business in the State of Indiana in the Southern District of Indiana.

## FACTS

5. Plaintiff began working for Defendant on September 13, 1999.

6. Plaintiff performed her job well.

7. All Plaintiff's evaluation were good.

8. Plaintiff received awards for her work performance.

9. Plaintiff was promoted to fill in as a team lead.

10. Plaintiff never received any write-ups as an employee while working for the Defendant.

11. Plaintiff was treated less favorably than similarly situated white employees and subjected to derogatory racial comments.

12. On or about November 9, 2019, Plaintiff reported that a white female, Kim Yeager called Plaintiff a nigger and restricted Plaintiff from moving by blocking Plaintiff's pathway.

13. The Plaintiff reported the incident to the civil rights representative, Kenneth Walton, and he asked Plaintiff "if she had ever been called a fucking nigger by a black person, and do you want Kim Yeager to lose her job".

14. A meeting was conducted to address Plaintiff's concern regarding the derogatory racial remarks and harassing behavior of Kim Yeager against the Plaintiff.

15. At the meeting Kim Yeager indicated that she did not call Plaintiff a nigger, but instead called her a fucking narcissistic.

16. Kim Yeager also admitted in the meeting that she "could be wherever she wanted to be and that she did nothing wrong when she stood in front of the Plaintiff."

17. Defendant agreed with Kim Yeager and indicated that Kim Yeager did nothing wrong.

18. Eventually the stress of the Defendant's treatment began to impact Plaintiff's health.

19. On or about January 22, 2020, Plaintiff had to admit herself into the mental health hospital due to racial discrimination and hostile work environment at the workplace.

20. Plaintiff was off work for six (6) weeks.

21. Plaintiff was diagnosed with depression, anxiety, and prescribed medication as a result of the severe conditions she was facing at the workplace.

22. On or about June 6, 2020, a picture of Plaintiff's boss, Tim Nobles wearing a Trump t-shirt with the words "fuck your feelings" was placed under Plaintiff's lunch box.

23. On or about June 7, 2020, Plaintiff complained to Virginia Maddox and Ryan Hyinstein regarding the picture that was placed under her lunch box.

24. Plaintiff attempted to make a formal complaint with Denise Monnier regarding the picture that was placed under her lunch box, but her complaint was disregarded by Denise Monnier.

25. In fact, Denise Monnier informed the Plaintiff that she was not in her right mind and when she gets in her right mind she should come back and make a complaint.

26. Plaintiff informed the Defendant that she was being bullied at the workplace.

27. Plaintiff specifically complained that when she was attempting to leave the work area Francis Keating, a white male employee would block her entrance to restrict her movement.

28. Plaintiff does not believe an investigation was conducted to resolve the issue of being bullied and harassed on at the workplace.

29. On a separate occasion, Plaintiff informed the Defendant, that a white male employee, Mark Stinger threatened the Plaintiff when he told Plaintiff "he was aware that she drove to work by herself and when he saw her alone he was going to floor her."

30. Plaintiff experience extreme fear due to the threat, so plaintiff reported the threat to the Defendant.

31. Plaintiff does not believe an investigation was conducted to correct the harassing and intimidating behavior of Mark Stinger.

32. In fact, as a result of Plaintiff's complaint against Mark Stinger, the Defendant, specifically, Steve Mallory reassigned Plaintiff out of her normal work area C1 and reassigned her to work area Y1.

33. Plaintiff was transferred to a different department, but the similarly situated white employee was not transferred to a different department.

34. Plaintiff reassignment into work area Y1 required Plaintiff to learn a different set of skills and the new work area was a much harder department.

35. Defendant began retaliating against Plaintiff after she filed her complaints.

36. On or about July 13, 2020, Plaintiff's supervisor, Tim Nobles refused to give Plaintiff job assignments and overtime opportunities.

37. Plaintiff complained to the Defendant that her supervisor was refusing to give her work assignments and interfering with Plaintiff's overtime; whereas similarly situated white employees were given work assignments and overtime opportunities, including those who had lower seniority than the Plaintiff.

38. Tim Nobles admitted to the Plaintiff that after the picture of him wearing the Trump t-shirt was placed under her lunch box he felt uncomfortable working alone side her and that is the reason he did not want to give work assignments.

39. Tim Nobles admission was stated in front of Mark Jackson (committee man) and Rachelle Denise (Labor Representative).

40. On or about August 2020, Kim Yeager later made a complaint against Plaintiff in reporting that Plaintiff looked at her.

41. As a result of Kim Yeager's complaint, Plaintiff's supervisor, Logan Street informed Plaintiff that she was no longer allowed to eat lunch/dinner in the same area as Kim Yeager.

42. On or about August 4, 2020, Defendants, specifically, Logan Street, Mark Jackson, and Tim Noble all agreed to reassign Plaintiff from eating area Y1 to a different eating area so Kim Yeager could feel safe at the workplace.

43. On or about August 5, 2020, Plaintiff filed an internal complaint that she was being subjected to racial discrimination, hostile work environment, and retaliation because she was reassigned to a different eating area; whereas a similarly situated white employee (i.e. Kim Yeager) was not reassigned to a different eating area.

44. Plaintiff was treated less favorably than similarly situated white employee, Kim Yeager because when Plaintiff complained against Kim Yeager, the Defendants did not relocate or reassign Kim Yeager to a different eating area.

45. On or about August 12, 2020, Plaintiff filed a complaint with the Indiana Civil Rights Commission Agency regarding racial discrimination, hostile work environment, and retaliation.

46. Defendant continued to retaliate against the Plaintiff by refusing to allow Plaintiff to participate in overtime.

47. Plaintiff complained that she was overlooked for overtime opportunities on October 3, October 29, and December 18, 2020.

48. Plaintiff filed an amended complaint on January 6, 2021, because she was still experiencing a racial discrimination, a hostile work environment, and retaliation.

49. On or about June 7, 2021, Plaintiff filed another formal complaint that the Defendant was interfering with her overtime opportunity yet again.

50. Plaintiff is still continuously experiencing discrimination, retaliation, and a hostile work environment.

51. On or about July 1, 2021, a diagonal slice meeting was posted throughout the plant for employees to volunteer to attend the meeting.

52. Plaintiff volunteered her name to attend the meeting.

53. Alisha Gaither, an employee at Defendant's plant approached Plaintiff to inform her that supervisor, Houston Smith stated that the Defendant did not want Plaintiff to attend the meeting because Defendant did not want to have anyone else being terminated.

54. Plaintiff believes this statement was referring to Denise Monnier being terminated based on the hostile work environment that Plaintiff was subjected when Denise Monnier made negative comments about Plaintiff's mental health.

55. Plaintiff complained by contacting Plaintiff's committee member to inquire why she was not allowed to attend the diagonal slice meeting; whereas other similarly situated white employees were allowed to attend.

56. This matter was investigated and supervisor, Houston Smith did inform Plaintiff that they have now decided that she would be allowed to attend the diagonal slice meeting.

57. The following day, Supervisor, Mike Spohn approached Plaintiff to inform her that he was fully aware of all the complaints Plaintiff filed and he was also aware of the pending lawsuit.

58. Mike Spohn then informed Plaintiff her lawsuit was the reason why the Defendants did not want her to participate in the diagonal slice meeting.

59. Plaintiff immediately contacted the Defendant's 1-800 hotline to make another formal complaint and reported that she was being intimidated by a supervisor, and subjected to retaliation and a hostile work environment.

60. Plaintiff also contacted Nate Ogg in the Labor Department to report Mike Spohn's comments to her.

61. Nate Ogg informed Plaintiff that he would investigate the matter.

62. Plaintiff cannot state with certainty that an investigation was completed, but she believes a investigation may have been completed; nevertheless, no disciplinary action was taken to reprimand Mike Spohn's comments to Plaintiff.

63. After finding out that nothing was being done to correct Mike Spohn's comment, which caused her additional stress and fear, she admitted herself back into the mental health hospital on or about September 20, 2021.

64. Plaintiff was later diagnosed with PTSD and was off work for six (6) weeks.

65. Plaintiff was order by her medical doctor to participate in intensive Out-Patient therapy to help her cope with her workplace conditions that were centered around racial discrimination, retaliation, and hostile work environment.

66. Plaintiff was also instructed by her doctor that she need to seek the help of a psychiatrist.

67. Plaintiff is currently still under medical care and meeting with both her therapist and psychiatrist once a month.

68. On or about December 2, 2021, Plaintiff was attending an All-Inclusive Meeting that the Defendant was conducting at the workplace.

69. Trevor Harris (Quality Control Manager) and Renee Gaynor (Plant Planner Manager) were responsible for conducting the All-Inclusive Meeting.

70. During the meeting, Trevor Harris asked several employees to share their concerns.

71. Plaintiff shared few examples of her discriminatory treatment at the workplace.

72. During a break from the meeting, Plaintiff was followed into the bathroom by Carla Henderson, a white employee, who informed Plaintiff that "no one wanted to hear about her soapbox stories and other shit Plaintiff was complaining about during the All-Inclusive meeting."

73. Plaintiff reported Carla Henderson comment to Trevor Harris and Renee Gaynor in front of all the attendees that were present at the All-Inclusive meeting.

74. During the All-Exclusive meeting, Carla Henderson admitted that she confronted Plaintiff and admitted to making the comments to Plaintiff.

75. Trevor Harris and Renee Gaynor did nothing or said anything to correct Carla Henderson's behavior towards the Plaintiff.

76. Plaintiff contacted the 1-800 hotline again to make a report that she was being placed in a hostile work environment and two managers heard Carla Henderson admit to making negative and harassing comments to Plaintiff, but did not do anything to stop the harassing behavior displayed by Carla Henderson.

## **COUNT 1**

77. Plaintiff incorporates by reference paragraphs 1-76.

78. Defendant, as a result of discriminating against Plaintiff due to her race, violated Title VII 42 U.S.C § 2000 et al.

## COUNT II

79. Plaintiff incorporates by reference paragraphs 1-76.

80. Defendant, as a result of discriminating against Plaintiff due to her race, violated 42 U.S.C § 1981 as amended.

## COUNT III

81. Plaintiff incorporates by reference paragraphs 1-76.

82. Defendant, as a result of creating and not correcting a hostile work environment and harassing work environment against Plaintiff due to her race, violated Title VII 42 U.S.C. § 2000 et al of the 1964 Civil Rights Act as amended.

## COUNT IV

83. Plaintiff incorporates by reference paragraphs 1-76.

84. Defendant, as a result of creating and not correcting a hostile work environment and harassing work environment against Plaintiff due to her race, violated 42 U.S.C. § 1981 as amended.

## COUNT V

85. Plaintiff incorporates by reference paragraphs 1-76.

86. Defendants, as a result of retaliating against Plaintiff due to her protected activity, for complaining of racial discrimination, violated Title VII 42 U.S.C. § 2000e et al.

## COUNT VI

87. Plaintiff incorporates by reference paragraphs 1-76.

88. Defendants, as a result of retaliating against Plaintiff due to her protected activity, for complaining of racial discrimination, violated 42 U.S.C. § 1981 as amended.

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A. Award Plaintiff back pay and benefits lost;

B. Award Plaintiff compensatory damages for future pecuniary loss, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

C. Award Plaintiff her cost on this action and reasonable attorney fees;

D. Award Plaintiff punitive damages;

E. Grant Plaintiff a permanent injunction enjoining Defendants from engaging in any future employment interference, and

F. Grant Plaintiff any other relief which is allowable under the circumstances of this case;

Respectfully submitted,

/s/ Deidra N. Haynes
Attorney for Plaintiff

**REQUEST FOR JURY TRIAL**

Comes now the Plaintiff and requests that this cause be tried by jury.

Respectfully submitted,

/s/ Deidra N. Haynes
Attorney for Plaintiff

Deidra N. Haynes, #28968-49
Law Office of Deidra N. Haynes, LLC
7007 Graham Road, Suite 102
Indianapolis, Indiana 46204
Tel: 317-982-7396